MICHAEL FAILLACE & ASSOCIATES, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------X

JESUS VILLAFAN, NICOLAS ROJAS
BARBOSA, PAMELA BROWN, RODERNO
RAMOS ZAMORA, SYREETA GEORGE
(A.K.A. SYREETA THOMAS), and VICTOR
GENARO LOPEZ LECARO, *individually and
on behalf of others similarly situated,*

                         *Plaintiffs*,

          -against-

VA&VK LLC (D/B/A BAKAR), YAHYA
ALLAHAM, VICTOR YAHIR, and VICTOR
ALLAHAM,

                      *Defendants.*

--------------------------------------------------------X

                                   **COMPLAINT**

             **COLLECTIVE ACTION UNDER**
                **29 U.S.C. § 216(b)**

                      **ECF Case**

       Plaintiffs Jesus Villafan, Nicolas Rojas Barbosa, Pamela Brown, Roderno Ramos Zamora,

Syreeta George (a.k.a. Syreeta Thomas), and Victor Genaro Lopez Lecaro, individually and on

behalf of others similarly situated (collectively, "Plaintiffs"), by and through their attorneys,

Michael Faillace & Associates, P.C., upon their knowledge and belief, and as against VA&VK

LLC (d/b/a Bakar), ("Defendant Corporation"), Yahya Allaham,  Victor Yahir, and  Victor

Allaham, ("Individual Defendants"), (collectively, "Defendants"), allege as follows:

## NATURE OF ACTION

      1.      Plaintiffs are former employees of Defendants VA&VK LLC (d/b/a Bakar), Yahya

Allaham, Victor Yahir, and Victor Allaham.

2.      Defendants own, operate, or control an American steakhouse, located at 1385 Coney Island Avenue, Brooklyn, NY 11230 under the name "Bakar".

3.      Upon information and belief, individual Defendants Yahya Allaham, Victor Yahir, and Victor Allaham, serve or served as owners, managers, principals, or agents of Defendant Corporation and, through this corporate entity, operate or operated the restaurant as a joint or unified enterprise.

4.      Plaintiffs were employed as sous chefs, chefs, cooks, dishwashers, servers, salad preparerd, pastry chefs and food runners at the restaurant located at 1385 Coney Island Avenue, Brooklyn, NY 11230.

5.      Plaintiff Ramos was ostensibly employed as a food runner. However, he was required to spend a considerable part of his work day performing non-tipped duties, including but not limited to preparing desserts, taking out trash, cleaning bathrooms, wiping down the tables and chairs, mopping the restaurant, polishing the silverware and taking out the utensils and plates (hereafter the "non-tipped duties").

6.      At all times relevant to this Complaint, Plaintiffs worked for Defendants in excess of 40 hours per week, without appropriate minimum wage, overtime, and spread of hours compensation for the hours that they worked.

7.      Rather, Defendants failed to maintain accurate recordkeeping of the hours worked and failed to pay Plaintiffs appropriately for any hours worked, either at the straight rate of pay or for any additional overtime premium.

8.      Further, Defendants failed to pay Plaintiffs the required "spread of hours" pay for any day in which they had to work over 10 hours a day.

9.      Furthermore, Defendants repeatedly failed to pay Plaintiffs wages on a timely basis.

10.     Defendants employed and accounted for Plaintiff Ramos as a food runner in their payroll, but in actuality his duties required a significant amount of time spent performing the non-tipped duties alleged above.

11.     Regardless, at all relevant times, Defendants paid Plaintiff Ramos at a rate that was either equal to or lower than the required tip-credit rate.

12.     However, under both the FLSA and NYLL, Defendants were not entitled to take a tip credit because Plaintiff Ramos's non-tipped duties exceeded 20% of each workday, or 2 hours per day, whichever is less in each day.  12 N.Y. C.R.R. §146.

13.     Upon information and belief, Defendants employed the policy and practice of disguising Plaintiff Ramos's actual duties in payroll records by designating him as a food runner instead of a non-tipped employee. This allowed Defendants to avoid paying Plaintiff Ramos at the minimum wage rate and enabled them to pay him at a rate that was equal to or lower than the tip credit rate.

14.     In addition, Defendants maintained a policy and practice of unlawfully appropriating Plaintiffs Rojas and Ramos  and other tipped employees' tips and made unlawful deductions from these Plaintiffs' and other tipped employees' wages.

15.     Defendants' conduct extended beyond Plaintiffs to all other similarly situated employees.

16.     At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs and other employees to work in excess of forty (40) hours per week without providing the minimum wage and overtime compensation required by federal and state law and regulations.

17.     Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq.* and 650 *et seq.* (the "NYLL"), and the "spread of hours" and overtime wage orders of the New York Commissioner of Labor codified at N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.6 (herein the "Spread of Hours Wage Order"), including applicable liquidated damages, interest, attorneys' fees and costs.

18.     Plaintiffs seek certification of this action as a collective action on behalf of themselves, individually, and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

19.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the FLSA, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

20.      Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district, Defendants maintain their corporate headquarters and offices within this district, and Defendants operate an American steakhouse located in this district. Further, Plaintiffs were employed by Defendants in this district.

## PARTIES

### *Plaintiffs*

21.     Plaintiff Jesus Villafan ("Plaintiff Villafan" or "Mr. Villafan") is an adult individual residing in Kings County, New York.

22.     Plaintiff Villafan was employed by Defendants at "Bakar Steakhouse & Butcher" from approximately December 2018 until on or about January 1, 2020.

23.     Plaintiff Nicolas Rojas Barbosa ("Plaintiff Rojas" or "Mr. Rojas") is an adult individual residing in Queens County, New York.

24.     Plaintiff Rojas was employed by Defendants at "Bakar Steakhouse & Butcher" from approximately December 25, 2019 until on or about January 2, 2020.

25.     Plaintiff Pamela Brown ("Plaintiff Brown" or "Ms. Brown") is an adult individual residing in Kings County, New York.

26.     Plaintiff Brown was employed by Defendants at "Bakar Steakhouse & Butcher" from approximately August 13, 2019 until on or about November 15, 2019.

27.     Plaintiff Roderno Ramos Zamora ("Plaintiff Ramos" or "Mr. Ramos") is an adult individual residing in Bronx County, New York.

28.     Plaintiff Ramos was employed by Defendants at "Bakar Steakhouse & Butcher" from approximately July 22, 2019 until on or about December 25, 2019.

29.     Plaintiff Syreeta George (a.k.a. Syreeta Thomas) ("Plaintiff George" or "Ms. George") is an adult individual residing in Kings County, New York.

30.     Plaintiff George was employed by Defendants at "Bakar Steakhouse & Butcher" from approximately December 1, 2018 until on or about January 3, 2020.

31.     Plaintiff Victor Genaro Lopez Lecaro ("Plaintiff Lopez" or "Mr. Lopez") is an adult individual residing in Kings County, New York.

32.     Plaintiff Lopez was employed by Defendants at "Bakar Steakhouse & Butcher" from approximately March 2019 until on or about January 2020.

*Defendants*

33.     At all relevant times, Defendants owned, operated, or controlled an American steakhouse, located at 1385 Coney Island Avenue, Brooklyn, NY 11230 under the name "Bakar".

34.     Upon information and belief, VA&VK LLC (d/b/a Bakar) was a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 1385 Coney Island Avenue, Brooklyn, NY 11230.

35.     Defendant Yahya Allaham is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Yahya Allaham is sued individually in his capacity as owner, officer and/or agent of Defendant Corporation. Defendant Yahya Allaham possessed operational control over Defendant Corporation, an ownership interest in Defendant Corporation, and controlled significant functions of Defendant Corporation. He determined the wages and compensation of the employees of Defendants, including Plaintiffs, established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

36.     Defendant Victor Yahir is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Victor Yahir is sued individually in his capacity as owner, officer and/or agent of Defendant Corporation. Defendant Victor Yahir possessed operational control over Defendant Corporation, an ownership interest in Defendant Corporation, and controlled significant functions of Defendant Corporation. He determined the wages and compensation of the employees of Defendants, including Plaintiffs, established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

37.     Defendant Victor Allaham is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Victor Allaham is sued individually in his capacity as owner, officer and/or agent of Defendant Corporation. Defendant Victor Allaham possessed operational control over Defendant Corporation, an ownership interest in Defendant Corporation, and controlled significant functions of Defendant Corporation. He determined the wages and compensation of the employees of Defendants, including Plaintiffs, established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

### *Defendants Constitute Joint Employers*

38.     Defendants operate an American steakhouse located in the Midwood neighborhood in Brooklyn in New York.

39.     Individual Defendants, Yahya Allaham, Victor Yahir, and Victor Allaham, possess operational control over Defendant Corporation, possess ownership interests in Defendant Corporation, and control significant functions of Defendant Corporation.

40.     Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

41.     Each Defendant possessed substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

42.     Defendants jointly employed Plaintiffs (and all similarly situated employees) and are Plaintiffs' (and all similarly situated employees') employers within the meaning of 29 U.S.C. 201 *et seq*. and the NYLL.

43.     In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

44.     Upon information and belief, Individual Defendants Yahya Allaham, Victor Yahir, and Victor Allaham operated Defendant Corporation as either an alter ego of themselves and/or fail to operate Defendant Corporation as an entity legally separate and apart from themselves, by among other things:

    a)  failing to adhere to the corporate formalities necessary to operate Defendant Corporation as a Corporation,

    b)  defectively forming or maintaining the corporate entity of Defendant Corporation, by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records,

    c)  transferring assets and debts freely as between all Defendants,

    d)  operating Defendant Corporation for their own benefit as the sole or majority shareholders,

    e)  operating Defendant Corporation for their own benefit and maintaining control over this corporation as a closed Corporation,

    f)  intermingling assets and debts of their own with Defendant Corporation,

    g)  diminishing and/or transferring assets of Defendant Corporation to avoid full liability as necessary to protect their own interests, and

    h)  Other actions evincing a failure to adhere to the corporate form.

45.     At all relevant times, Defendants were Plaintiffs' employers within the meaning of the FLSA and New York Labor Law. Defendants had the power to hire and fire Plaintiffs, controlled

the terms and conditions of employment, and determined the rate and method of any compensation in exchange for Plaintiffs' services.

46.    In each year from 2018 to 2020, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

47.    In addition, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce. As an example, numerous items that were used in the restaurant on a daily basis are goods produced outside of the State of New York.

*Individual Plaintiffs*

48.    Plaintiffs are former employees of Defendants who were employed as sous chefs, chefs, cooks, dishwashers, servers, salad preparers, pastry preparers and ostensibly as food runners. However, the food runner spent over 20% of his work time performing the non-tipped duties outlined above.

49.    Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

*Plaintiff Jesus Villafan*

50.    Plaintiff Villafan was employed by Defendants from approximately December 2018 until on or about January 1, 2020.

51.    Defendants employed Plaintiff Villafan as sous chef and then chef.

52.    Plaintiff Villafan regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

53.    Plaintiff Villafan's work duties required neither discretion nor independent judgment.

54.     Throughout his employment with Defendants, Plaintiff Villafan regularly worked in excess of 40 hours per week.

55.     From approximately December 2018 until on or about May 2019, Plaintiff Villafan worked from approximately 2:00 p.m. until on or about 11:00 p.m., Mondays through Thursdays, from approximately 6:00 p.m. or 8:00 p.m. until on or about 11:00 p.m., Saturdays, and from approximately 2:00 p.m. until on or about 12:00 a.m., Sundays (typically 48 to 51 hours per week).

56.     From approximately June 2019 until on or about January 2020, Plaintiff Villafan worked from approximately 3:00 p.m. until on or about 11:00 p.m., Mondays through Thursdays, from approximately 6:00 p.m. or 8:00 p.m. until on or about 11:00 p.m., Saturdays, and from approximately 2:00 p.m. until on or about 12:00 a.m., Sundays (typically 44 to 47 hours per week).

57.     Throughout his employment, Defendants paid Plaintiff Villafan his wages by personal check.

58.     From approximately December 2018 until on or about March 2019, Defendants paid Plaintiff Villafan $19.00 per hour.

59.     From approximately March 2019 until on or about April 18, 2019, Defendants paid Plaintiff Villafan a fixed salary of $800 per week.

60.     From approximately April 19, 2019 until on or about August 2019, Defendants paid Plaintiff Villafan a fixed salary of $600 per week.

61.     From approximately September 2019 until on or about January 1, 2020, Defendants paid Plaintiff Villafan a fixed salary of $900 per week.

62.     For approximately 4 weeks, Defendants did not pay Plaintiff Villafan any wages for his work.

63.     Plaintiff Villafan's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

64.     For example, Defendants required Plaintiff Villafan to work an additional 2 hours before his scheduled start time one day a week, and did not pay him for the additional time he worked.

65.     Defendants never granted Plaintiff Villafan any breaks or meal periods of any kind.

66.     From approximately March 2019 until on or about January 2020, Plaintiff Villafan was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

67.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Villafan regarding overtime and wages under the FLSA and NYLL.

68.     Defendants did not provide Plaintiff Villafan an accurate statement of wages, as required by NYLL 195(3).

69.     Defendants did not give any notice to Plaintiff Villafan, in English and in Spanish (Plaintiff Villafan's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Plaintiff Nicolas Rojas Barbosa*

70.     Plaintiff Rojas was employed by Defendants from approximately December 25, 2019 until on or about January 2, 2020.

71.     Defendants ostensibly employed Plaintiff Rojas as a server.

72.     Plaintiff Rojas regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

73.     Plaintiff Rojas's work duties required neither discretion nor independent judgment.

74.     Throughout his employment with Defendants, Plaintiff Rojas regularly worked in excess of 40 hours per week.

75.     From approximately December 25, 2019 until on or about January 2, 2020, Plaintiff Rojas worked from approximately 3:30 p.m. until on or about 10:30 p.m. to 11:00 p.m., 7 days a week (typically 49 to 52.5 hours per week).

76.     From approximately December 25, 2019 until on or about January 2, 2020, Plaintiff Rojas was not compensated for any of his hours worked.

77.     Plaintiff Rojas's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

78.     For example, Defendants required Plaintiff Rojas to work an additional 30 minutes past his scheduled departure time two days a week, and did not pay him for the additional time he worked.

79.     Plaintiff Rojas was never notified by Defendants that his tips were being included as an offset for wages.

80.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Rojas's wages.

81.     Defendants withheld a portion of Plaintiff Rojas's tips; specifically, Defendants pocketed all of his tips.

82.     Plaintiff Rojas was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

83.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Rojas regarding overtime and wages under the FLSA and NYLL.

84.     Defendants did not provide Plaintiff Rojas an accurate statement of wages, as required by NYLL 195(3).

85.     Defendants did not give any notice to Plaintiff Rojas, in English and in Spanish (Plaintiff Rojas's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

86.     Defendants required Plaintiff Rojas to purchase "tools of the trade" with his own funds—including uniform shirts.

*Plaintiff Pamela Brown*

87.     Plaintiff Brown was employed by Defendants from approximately August 13, 2019 until on or about November 15, 2019.

88.     Defendants employed Plaintiff Brown as a general manager.

89.     Plaintiff Brown regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

90.     Plaintiff Brown's work duties required neither discretion nor independent judgment.

91.     Throughout her employment with Defendants, Plaintiff Brown regularly worked in excess of 40 hours per week.

92.     From approximately August 13, 2019 until on or about September 15, 2019, Plaintiff Brown worked from approximately 12:00 p.m. until on or about 12:00 a.m. to 12:30 a.m., 5 days a week (typically 60 to 62.5 hours per week).

93.     From approximately September 16, 2019 until on or about November 15, 2019, Plaintiff Brown worked from approximately 12:00 p.m. until on or about 12:00 a.m. to 12:30 a.m., 5 days a week and from approximately 6:00 p.m. until on or about 1:00 a.m., one day a week (typically 67 to 69.5 hours per week).

94.     Throughout her employment, Defendants paid Plaintiff Brown her wages by personal check.

95.     From approximately August 13, 2019 until on or about November 15, 2019, Defendants paid Plaintiff Brown a fixed salary of $1,000 per week.

96.     Defendants did not pay Plaintiff Brown any wages for three weeks of work ($3,000.

97.     Plaintiff Brown's pay did not vary even when she was required to stay later or work a longer day than her usual schedule.

98.     For example, Defendants required Plaintiff Brown to work an additional 4 hours before her scheduled start time every day, and did not pay her for the additional time she worked.

99.     Defendants never granted Plaintiff Brown any breaks or meal periods of any kind.

100.    Plaintiff Brown was not required to keep track of her time, nor to her knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected her actual hours worked.

101.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Brown regarding overtime and wages under the FLSA and NYLL.

102.    Defendants did not provide Plaintiff Brown an accurate statement of wages, as required by NYLL 195(3).

103.    Defendants did not give any notice to Plaintiff Brown of her rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

104.    Defendants required Plaintiff Brown to purchase "tools of the trade" with her own funds—including materials for the restaurant at Jetro, fruits and candles for the restaurant.

*Plaintiff Roderno Ramos Zamora*

105.    Plaintiff Ramos was employed by Defendants from approximately July 22, 2019 until on or about December 25, 2019.

106.    Defendants ostensibly employed Plaintiff Ramos as a busboy, food runner, food expediter and a salad maker.

107.    However, Plaintiff Ramos was also required to spend a significant portion of his work day performing the non-tipped duties described above.

108.    Although Plaintiff Ramos ostensibly was employed as a busboy, food runner, food expediter and a salad maker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

109.    Plaintiff Ramos regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

110.    Plaintiff Ramos's work duties required neither discretion nor independent judgment.

111.    Throughout his employment with Defendants, Plaintiff Ramos regularly worked in excess of 40 hours per week.

112.    From approximately July 22, 2019 until on or about December 25, 2019, Plaintiff Ramos worked from approximately 4:00 p.m. until on or about 11:00 p.m., Sundays through Thursdays and from approximately 7:00 p.m. until on or about 12:00 a.m., Saturdays (typically 47 hours per week).

113.    On two occasions, Plaintiff Ramos worked from approximately 4:00 p.m. until on or about 11:00 p.m., Sundays through Thursdays, from approximately 7:00 p.m. until on or about 12:00 a.m., Saturdays, and from approximately 10:00 a.m. until on or about 2:00 p.m., Fridays (typically 51 hours per week).

114.    Throughout his employment, Defendants paid Plaintiff Ramos his wages by personal check.

115.    From approximately July 22, 2019 until on or about December 25, 2019, Defendants paid Plaintiff Ramos $10.00 per hour.

116.    For approximately one month, Defendants did not pay Plaintiff Ramos any wages for his work.

117.    Defendants never granted Plaintiff Ramos any breaks or meal periods of any kind.

118.    Plaintiff Ramos was never notified by Defendants that his tips were being included as an offset for wages.

119.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Ramos's wages.

120.    Defendants required Plaintiff Ramos to share his tips with Tony, the restaurant manager.

121.    Plaintiff Ramos was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

122.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Ramos regarding overtime and wages under the FLSA and NYLL.

123.    Defendants did not provide Plaintiff Ramos an accurate statement of wages, as required by NYLL 195(3).

124.    Defendants did not give any notice to Plaintiff Ramos, in English and in Spanish (Plaintiff Ramos's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Plaintiff Syreeta George (a.k.a. Syreeta Thomas)*

125.    Plaintiff George was employed by Defendants from approximately December 1, 2018 until on or about January 3, 2020.

126.    Defendants employed Plaintiff George as a pastry maker.

127.    Plaintiff George regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

128.    Plaintiff George's work duties required neither discretion nor independent judgment.

129.    Throughout her employment with Defendants, Plaintiff George regularly worked in excess of 40 hours per week.

130.    From approximately December 1, 2018 until on or about February 2019, Plaintiff George worked from approximately 12:00 p.m. until on or about 11:30 p.m. to 12:00 a.m., 6 days a week (typically 69 to 72 hours per week).

131.    From approximately February 2019 until on or about June 2019, Plaintiff George worked from approximately 3:00 p.m. until on or about 10:30 p.m. to 11:30 p.m., 6 days a week (typically 45 to 51 hours per week).

132.    From approximately June 2019 until on or about December 21, 2019, Plaintiff George worked from approximately 4:00 p.m. until on or about 10:30 p.m. to 11:30 p.m., 5 days a week (typically 32.5 to 37.5 hours per week).

133.    From approximately January 1, 2020 until on or about January 3, 2020, Plaintiff George worked from approximately 5:00 p.m. until on or about 10:00 p.m., 3 days a week (typically 15 hours per week).

134.    Throughout her employment, Defendants paid Plaintiff George her wages by personal check.

135.     From approximately December 2018 until on or about February 2019, Defendants paid Plaintiff George a fixed salary of $1,000 per week.

136.     From approximately February 2019 until on or about December 2019, Defendants paid Plaintiff George a fixed salary of $750 per week.

137.     From approximately January 1, 2020 until on or about January 3, 2020, Defendants paid Plaintiff George a fixed salary of $400 per week.

138.     For approximately 4 weeks, Defendants did not pay Plaintiff George any wages for her work.

139.     Plaintiff George's pay did not vary even when she was required to stay later or work a longer day than her usual schedule.

140.     For example, Defendants required Plaintiff George to work an additional 30 minutes to 1 hour past her scheduled departure time every day, and did not pay her for the additional time she worked.

141.     Defendants never granted Plaintiff George any breaks or meal periods of any kind.

142.     Plaintiff George was not required to keep track of her time, nor to her knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected her actual hours worked.

143.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff George regarding overtime and wages under the FLSA and NYLL.

144.     Defendants did not provide Plaintiff George an accurate statement of wages, as required by NYLL 195(3).

145.     Defendants did not give any notice to Plaintiff George of her rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Plaintiff Victor Genaro Lopez Lecaro*

146.    Plaintiff Lopez was employed by Defendants from approximately March 2019 until on or about January 2020.

147.    Defendants employed Plaintiff Lopez as a cook and a dishwasher.

148.    Plaintiff Lopez regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

149.    Plaintiff Lopez's work duties required neither discretion nor independent judgment.

150.    Throughout his employment with Defendants, Plaintiff Lopez regularly worked in excess of 40 hours per week.

151.    From approximately March 2019 until on or about June 2019, Plaintiff Lopez worked from approximately 4:00 p.m. until on or about 12:20 a.m., Sundays through Thursdays (typically 49.98 hours per week).

152.    From approximately June 2019 until on or about November 15, 2019, Plaintiff Lopez worked from approximately 4:00 p.m. until on or about 12:20 a.m., Sundays through Thursdays and from approximately 8:00 a.m. until on or about 3:00 p.m., Fridays (typically 56.98 hours per week).

153.    From approximately November 16, 2019 until on or about November 22, 2019, Plaintiff Lopez worked from approximately 4:00 p.m. until on or about 12:20 a.m., Sundays through Thursdays, from approximately 1:00 p.m. until on or about 11:00 p.m., Fridays, and  from approximately 7:00 p.m. until on or about 12:00 a.m., Saturdays (typically 56.65 hours per week).

154.    From approximately November 23, 2019 until on or about January 2020, Plaintiff Lopez worked from approximately 4:00 p.m. until on or about 12:20 a.m., 5 days a week, from approximately 8:00 a.m. until on or about 3:00 p.m., one day a week, and from approximately 7:00 p.m. until on or about 12:00 a.m., one day a week (typically 53.65 hours per week).

155.    From approximately December 22, 2019 until on or about December 28, 2019, Plaintiff Lopez worked from approximately 4:00 p.m. until on or about 12:20 a.m., four days a week, from approximately 2:00 p.m. until on or about 10:00 p.m., one day a week, from approximately 7:00 p.m. until on or about 12:00 a.m., Saturdays, from approximately 8:00 a.m. until on or about 3:00 p.m., one day a week, and from approximately 7:00 p.m. until on or about 12:00 a.m., one day a week (typically 53.32 hours per week).

156.    Throughout his employment, Defendants paid Plaintiff Lopez his wages by personal check.

157.    From approximately March 2019 until on or about January 2020, Defendants paid Plaintiff Lopez $15.00 per hour.

158.    For approximately 2 weeks of work, Defendants did not pay Plaintiff Lopez any wages for his work.

159.    Plaintiff Lopez's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

160.    For example, Defendants required Plaintiff Lopez to work an additional 20 to 30 minutes past his scheduled departure time every day, and did not pay him for the additional time he worked.

161.    Although Plaintiff Lopez took a 10 minute meal break, defendants always interrupted the break by requiring him to go back to work.

162.    Plaintiff Lopez was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

163.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Lopez regarding overtime and wages under the FLSA and NYLL.

164.    Defendants did not provide Plaintiff Lopez an accurate statement of wages, as required by NYLL 195(3).

165.    Defendants did not give any notice to Plaintiff Lopez, in English and in Spanish (Plaintiff Lopez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Defendants' General Employment Practices*

166.    At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs (and all similarly situated employees) to work in excess of 40 hours a week without paying them appropriate minimum wage, spread of hours pay, and overtime compensation as required by federal and state laws.

167.    Plaintiffs were victims of Defendants' common policy and practices which violate their rights under the FLSA and New York Labor Law by, *inter alia*, not paying them the wages they were owed for the hours they worked.

168.    Defendants' pay practices resulted in Plaintiffs not receiving payment for all their hours worked, and resulted in Plaintiffs' effective rate of pay falling below the required minimum wage rate.

169.    Defendants habitually required Plaintiffs to work additional hours beyond their regular shifts but did not provide them with any additional compensation.

170.    Defendants required Plaintiff Ramos and all other food runners to perform general non-tipped tasks in addition to their primary duties as food runners.

171.     Plaintiff Ramos and all similarly situated employees, ostensibly were employed as tipped employees by Defendants, although their actual duties included a significant amount of time spent performing the non-tipped duties outlined above.

172.     Plaintiff Ramos's duties were not incidental to his occupation as a tipped worker, but instead constituted entirely unrelated general restaurant work with duties, including the non-tipped duties described above.

173.     Plaintiff Ramos and all other tipped workers were paid at either the tip credit rate or at a rate below the tip credit rate by Defendants.

174.     However, under state law, Defendants were not entitled to a tip credit because the tipped worker's and Plaintiff Ramos's non-tipped duties exceeded 20% of each workday (or 2 hours a day, whichever is less) (12 N.Y.C.R.R. § 146).

175.     New York State regulations provide that an employee cannot be classified as a tipped employee on any day in which he or she has been assigned to work in an occupation in which tips are not customarily received. (12 N.Y.C.R.R. §§137-3.3 and 137-3.4). Similarly, under federal regulation 29 C.F.R. §531.56(e), an employer may not take a tip credit for any employee time if that time is devoted to a non-tipped occupation.

176.     In violation of federal and state law as codified above, Defendants classified Plaintiff Ramos and other tipped workers as tipped employees, and paid them at a rate that was equal to or Below the Tip-credit Rate when they should have classified them as non-tipped employees and paid them at the minimum wage rate.

177.     Defendants failed to inform Plaintiffs who received tips that Defendants intended to take a deduction against Plaintiffs' earned wages for tip income, as required by the NYLL before any deduction may be taken.

178.     Defendants failed to inform Plaintiffs who received tips, that their tips were being credited towards the payment of the minimum wage.

179.     Defendants failed to maintain a record of tips earned by Plaintiffs who worked as servers and food runners for the tips they received. As part of its regular business practice, Defendants intentionally, willfully, and repeatedly harmed Plaintiffs who received tips, by engaging in a pattern, practice, and/or policy of violating the FLSA and the NYLL. This policy and pattern or practice included depriving sous chefs, chefs, cooks, dishwashers, servers, salad preparers, pastry chefs and food runners of a portion of the tips earned during the course of employment.

180.     Defendants unlawfully misappropriated charges purported to be gratuities received by tipped Plaintiffs, and other tipped employees, in violation of New York Labor Law § 196-d (2007).

181.     Under the FLSA and NYLL, in order to be eligible for a "tip credit," employers of tipped employees must either allow employees to keep all the tips that they receive or forgo the tip credit and pay them the full hourly minimum wage.

182.     Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the FLSA and NYLL by failing to maintain accurate and complete timesheets and payroll records.

183.     Defendants paid Plaintiffs their wages by personal checks.

184.     Defendants failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL.

185.    Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) worked, and to avoid paying Plaintiffs properly for their full hours worked.

186.    Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

187.    Defendants' unlawful conduct was intentional, willful, in bad faith, and caused significant damages to Plaintiffs and other similarly situated former workers.

188.    Defendants failed to provide Plaintiffs  and other employees with accurate wage statements at the time of their payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

189.    Defendants failed to provide Plaintiffs  and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

## FLSA COLLECTIVE ACTION CLAIMS

190.     Plaintiffs bring their FLSA minimum wage, overtime compensation, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons (the "FLSA Class members"), i.e., persons who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA Class Period").

191.     At all relevant times, Plaintiffs and other members of the FLSA Class were similarly situated in that they had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay them the required minimum wage, overtime pay at a one and one-half their regular rates for work in excess of forty (40) hours per workweek under the FLSA, and willfully failing to keep records under the FLSA.

192.     The claims of Plaintiffs stated herein are similar to those of the other employees.

## FIRST CAUSE OF ACTION

### VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA

193.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

194.     At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).  Defendants had the power to hire and fire Plaintiffs (and the FLSA Class Members), controlled the terms and conditions of their employment, and determined the rate and method of any compensation in exchange for their employment.

195.     At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

196.     Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

197.     Defendants failed to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

198.     Defendants' failure to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

199.     Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

### VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA

200.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

201.     Defendants, in violation of 29 U.S.C. § 207(a)(1), failed to pay Plaintiffs (and the FLSA Class members) overtime compensation at a rate of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

202.     Defendants' failure to pay Plaintiffs (and the FLSA Class members), overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

203.     Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

### VIOLATION OF THE NEW YORK MINIMUM WAGE ACT

204.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

205.     At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.  Defendants had the power to hire and fire Plaintiffs,

controlled the terms and conditions of their employment, and determined the rates and methods of any compensation in exchange for their employment.

206.    Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, paid Plaintiffs less than the minimum wage.

207.    Defendants' failure to pay Plaintiffs the minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

208.    Plaintiffs were damaged in an amount to be determined at trial.

<u>FOURTH CAUSE OF ACTION</u>

**VIOLATION OF THE OVERTIME PROVISIONS**

**OF THE NEW YORK STATE LABOR LAW**

209.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

210.    Defendants, in violation of N.Y. Lab. Law § 190 *et seq*., and supporting regulations of the New York State Department of Labor, failed to pay Plaintiffs overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

211.    Defendants' failure to pay Plaintiffs overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

212.    Plaintiffs were damaged in an amount to be determined at trial.

<u>FIFTH CAUSE OF ACTION</u>

**VIOLATION OF THE SPREAD OF HOURS WAGE ORDER**

**OF THE NEW YORK COMMISSIONER OF LABOR**

213.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

214.     Defendants failed to pay Plaintiffs one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiffs' spread of hours exceeded ten hours in violation of NYLL §§ 650 *et seq*. and 12 N.Y.C.R.R. §§ 146-1.6.

215.     Defendants' failure to pay Plaintiffs an additional hour's pay for each day Plaintiffs' spread of hours exceeded ten hours was willful within the meaning of NYLL § 663.

216.     Plaintiffs were damaged in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION

## VIOLATION OF THE NOTICE AND RECORDKEEPING

## REQUIREMENTS OF THE NEW YORK LABOR LAW

217.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

218.     Defendants failed to provide Plaintiffs with a written notice, in English and in Spanish (Plaintiffs' primary language), containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

219.     Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## SEVENTH CAUSE OF ACTION

## VIOLATION OF THE WAGE STATEMENT PROVISIONS

## OF THE NEW YORK LABOR LAW

220.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

221.     With each payment of wages, Defendants failed to provide Plaintiffs with an accurate statement listing each of the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL 195(3).

222.     Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## EIGHTH CAUSE OF ACTION

## RECOVERY OF EQUIPMENT COSTS

223.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

224.     Defendants required Plaintiffs to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and "tools of the trade" required to perform their jobs, further reducing their wages in violation of the FLSA and NYLL.  29 U.S.C.  § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

225.     Plaintiffs were damaged in an amount to be determined at trial.

## NINTH CAUSE OF ACTION

## UNLAWFUL DEDUCTIONS FROM TIPS IN VIOLATION

## OF THE NEW YORK LABOR LAW

226.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

227.     At all relevant times, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.

228.     New York State Labor Law § 196-d prohibits any employer or his agents, including owners and managers, from demanding or accepting, directly or indirectly, any part of the gratuities received by an employee, or retaining any part of a gratuity, or any charge purported to be a gratuity, for an employee.

229.     Defendants unlawfully misappropriated a portion of Plaintiffs' tips that were received from customers.

230.     Defendants knowingly and intentionally retained a portion of Plaintiffs' tips in violations of the NYLL and supporting Department of Labor Regulations.

Plaintiffs were damaged in an amount to be determined at trial.

## TENTH CAUSE OF ACTION

## VIOLATION OF THE TIMELY PAYMENT PROVISIONS

## OF THE NEW YORK LABOR LAW

231.     Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

232.     Defendants did not pay Plaintiffs on a regular weekly basis, in violation of NYLL §191.

233.     Defendants are liable to each Plaintiff in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants by:

(a)     Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members apprising them of the pendency

of this action, and permitting them to promptly file consents to be Plaintiffs in the FLSA claims in this action;

(b)     Declaring that Defendants violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(c)     Declaring that Defendants violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(d)     Declaring that Defendants violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' and the FLSA Class members' compensation, hours, wages, and any deductions or credits taken against wages;

(e)     Declaring that Defendants' violations of the provisions of the FLSA were willful as to Plaintiffs and the FLSA Class members;

(f)     Awarding Plaintiffs and the FLSA Class members damages for the amount of unpaid minimum wage, overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(g)     Awarding Plaintiffs and the FLSA Class members liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum wage and overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(h)     Declaring that Defendants violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(i)     Declaring that Defendants violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(j)      Declaring that Defendants violated the spread-of-hours requirements of the NYLL and supporting regulations as to Plaintiffs;

(k)      Declaring that Defendants violated the timely payment provisions of the NYLL as to Plaintiffs;

(l)      Declaring that Defendants violated the notice and recordkeeping requirements of the NYLL with respect to Plaintiffs' compensation, hours, wages and any deductions or credits taken against wages;

(m)     Declaring that Defendants' violations of the provisions of the NYLL and spread of hours wage order were willful as to Plaintiffs;

(n)      Awarding Plaintiffs damages for the amount of unpaid minimum wage and overtime compensation, and for any improper deductions or credits taken against wages, as well as awarding spread of hours pay under the NYLL as applicable

(o)      Awarding Plaintiffs damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(p)      Awarding Plaintiffs liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage, overtime compensation, and spread of hours pay shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(q)      Awarding Plaintiffs and the FLSA Class members pre-judgment and post-judgment interest as applicable;

(r)      Awarding Plaintiffs and the FLSA Class members the expenses incurred in this action, including costs and attorneys' fees;

(s)     Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(t)     All such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

 Plaintiffs demand a trial by jury on all issues triable by a jury.

Dated: New York, New York
       September 16, 2020

MICHAEL FAILLACE & ASSOCIATES, P.C.

By: _____/s/ Michael Faillace_____
Michael Faillace [MF-8436]
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*